IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MURPHY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:17-cv-00556-NKL |
| | ) | |
| RIGDON, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Rigdon, Inc. seeks summary judgment on the Murphys' claims under the Missouri Merchandising Practices Act (MMPA). The Motion is granted as to the claim alleging concealment or omissions by Rigdon of the condition of its equipment. It is denied in all other respects.

**I.    Background[1]**

In July 2016, Defendant Rigdon washed William and Jeri Murphy's windows at their home in the Village of Lock Lloyd, Missouri. Following the window washing, the Murphys observed numerous scratches on the windows. They have stated under oath that the scratches were not there before Rigdon's employees washed the windows. (Deposition of Jeri Murphy, p. 52:14-19, Exhibit G). Also, at the time of the window washing, Jeri Murphy noticed that one of the Rigdon employees washing the windows had a big ring on, probably the size of a silver dollar. (Deposition of Jeri Murphy pp 42:10 to 44:4, Exhibit G).[2]

---

[1]    In ruling on a motion for summary judgment, the Court must view all facts in a light most favorable to the nonmoving party, and that party receives the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

[2]    Mr. Rigdon was told by one of his employees that the scratches were on the windows when the employee arrived. There is a dispute about the admissibility of this hearsay because it is contained in a

William and Jeri Murphy mutually hired Rigdon to wash the windows, in part because Rigdon had washed their windows on several prior occasions and they had had no problems. Doc. 21-1, p. 1. Jeri Murphy also based her decision on a coupon she had from Rigdon. The coupon offered a 100% guarantee, but she did not use the coupon because Mr. Rigdon offered her a better deal based on their prior work for the Murphys. Mr. Rigdon had also previously told Jeri Murphy his work was 100% guaranteed. (Deposition of Jeri Murphy pp 22:24 to 24:11, Exhibit G). On one prior occasion, Mr. Rigdon made good on his guarantee when there was a problem with the window washing at the Murphy's home. (Deposition of Jeri Murphy pp 27:1 to 28:13, Exhibit G).

During her deposition, Jeri Murphy did not explicitly say that she did or did not rely on a guarantee, although she was asked several times what led her to hire Mr. Rigdon. However, her affidavit was attached to the Plaintiffs' Opposition to Summary Judgment, and in that affidavit, she said that:

> 6. The decision William Murphy and I made to hire Rigdon Inc. to clean our windows in 2016 was the result of several factors, which included our long-standing, mostly positive prior relationship with Kerry Rigdon and his company Rigdon, Inc., satisfactory work done by Rigdon before 2016, the reputation of Kerry Rigdon and Rigdon Inc., and Kerry Rigdon and Rigdon Inc.'s guarantees.
>
> 7. Defendant's guarantee was the genesis of the many-year business relationship between the Murphys and Rigdon, Inc.; I knew of Kerry Rigdon's guarantee of his company's work; and I relied on his representation that he guaranteed his work in deciding with William

---

Rigdon business record, not an affidavit from the employee. While Rigdon's business records are admissible, there must be a separate hearsay exception before hearsay statements in the business record can be admitted. This evidentiary dispute need not be resolved now because Rigdon's Motion for Summary Judgment only contends that the Murphys have not made a submissible case on their MMPA claim. This hearsay statement would not result in summary judgment in favor of Rigdon because it only creates a disputed issue of fact.

> Murphy to continue to use Rigdon's window-washing services over the years, including in 2016.
>
> 8. Had Kerry Rigdon or Rigdon Inc. (hereinafter "Rigdon") at any time disavowed Rigdon's guarantee, or told either me or William Murphy that Rigdon did not guarantee its work, William Murphy and I would not have employed Rigdon for our window-washing needs on those occasions in 2016 without additional or different consideration or a written contract, if at all.
>
> 9. Neither Kerry Rigdon nor any other employee of Rigdon ever told me or my William [sic] that Rigdon's guarantee was no longer in effect prior to washing our windows on July 5, 2016, or at any time before that.

Doc. 21-1, p. 1.

On July 21, 2016, Rigdon refused to pay for any of the damage on the Murphy's windows.

## II. Summary Judgment Standards

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). The moving party bears the burden of establishing a lack of genuine issue of fact. *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010). The rule requires summary judgment to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party." *Smith v. Basin Park Hotel, Inc.*, 350 F.3d 810, 813 (8th Cir. 2003) (citation omitted). Partial summary judgment "is merely a pretrial

adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56, Advisory Committee Note.

### III. Discussion

The MMPA protects consumers by expanding the common law definition of fraud "to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo. App. 1973); *see also Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725–26 (Mo. Banc 2009). To that end, the MMPA makes unlawful the "act, use or employment by any person" of any unfair or deceptive practice done "in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.1. An unlawful practice is a violation of the MMPA "whether committed before, during or after the sale." Mo. Rev. Stat. § 407.020.1; *see Schuchmann v. Air Services Heating & Air Conditioning*, 199 S.W.3d 228, 232 (Mo. App. 2006). Only damages caused by an unfair act can be recovered under the MMPA. *Murphy v. Stonewall Kitchens*, 503 S.W.3d 308 (Mo. App. 2016).

To state a claim for an MMPA violation, a plaintiff must show they (1) purchased merchandise (which includes services) from defendants; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices Act. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. banc 2007); *Edmonds v. Hough*, 344 S.W.3d 219 (Mo. App. 2011). *See also*, Missouri Approved Instruction 39.01.

#### A. The 100% Guarantee Representation

Defendant Rigdon seeks summary judgment on the Murphys' MMPA claim, which is based on Mr. Rigdon's representation that his company's work was 100% guaranteed. First, it

4

argues that the Murphys failed to show that they made their selection of Rigdon based on the 100% guarantee, and as a result have failed to show their damages were caused by an MMPA violation. Second, it argues that a guarantee is not an unlawful act under the MMPA. Third, it belatedly argues that a failure to honor a 100% guarantee is mere puffery and therefore not actionable under the MMPA.

### 1. Is There Evidence that the 100% Guarantee was a Factor in the Murphy's Decision to Hire Rigdon?

Defendant Rigdon claims that the Murphys have produced no evidence that they hired Rigdon because of the 100% guarantee. Without such evidence, the Murphys cannot show any causal relationship between their damages and Rigdon's failure to honor the guarantee, a crucial element of a MMPA claim. The flaw in Rigdon's argument is that there is evidence that the Murphys did rely in part on the 100% guarantee.

Rigdon points to the deposition of Jeri Murphy to show that she did not rely on the guarantee. In the deposition, Jeri Murphy did not explicitly say that she did or did not rely on a guarantee. However, in her affidavit which was prepared after the deposition, she said that:

6. The decision William Murphy and I made to hire Rigdon Inc. to clean our windows in 2016 was the result of several factors, which included our long-standing, mostly positive prior relationship with Kerry Rigdon and his company Rigdon, Inc., satisfactory work done by Rigdon before 2016, the reputation of Kerry Rigdon and Rigdon Inc., and Kerry Rigdon and Rigdon Inc. 's guarantees.

7. Defendant's guarantee was the genesis of the many-year business relationship between the Murphys and Rigdon, Inc.; I knew of Kerry Rigdon's guarantee of his company's work; and I relied on his representation that he guaranteed his work in deciding with William Murphy to continue to use Rigdon's window-washing services over the years, including in 2016.

8. Had Kerry Rigdon or Rigdon Inc. (hereinafter "Rigdon") at any time disavowed Rigdon's guarantee, or told either me or William Murphy that Rigdon did not guarantee its work, William Murphy and I would not have

> employed Rigdon for our window-washing needs on those occasions in 2016 without additional or different consideration or a written contract, if at all.
>
> 9. Neither Kerry Rigdon nor any other employee of Rigdon ever told me or my William [sic] that Rigdon's guarantee was no longer in effect prior to washing our windows on July 5, 2016, or at any time before that.

Doc. 21-1, p. 1.

Rigdon argues that this affidavit should be stricken because it contradicts Jeri Murphy's deposition testimony. It cites longstanding Eighth Circuit precedent holding that a party may not use an affidavit to contradict prior deposition testimony to create a sham issue of fact to avoid a motion for summary judgment. *Canfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1363 (8th Cir. 1983). However, this precedent is not applicable here because the affidavit does not contradict Ms. Murphys' deposition testimony.

Read in the light most favorable to the Murphys, Jeri Murphy's deposition testimony shows that she hired Rigdon because of her longstanding and satisfactory relationship with Rigdon. That long standing relationship included Mr. Rigdon guaranteeing the work and honoring that guarantee on one prior occasion. Importantly, at no time in the deposition was she asked whether she made her decision to continue her relationship with Rigdon because of a guarantee. Therefore, the Court does not find that the affidavit conflicts with Jeri Murphy's deposition. While the deposition testimony may be enough, standing alone, to show that the guarantee was a factor in Jeri Murphy's decision making, the affidavit clearly supports that inference and thereby defeats summary judgment on this aspect of the Murphy's MMPA claim.

### 2. Is a Misrepresentation of a Guarantee an Unlawful Act Under the MMPA?

Rigdon's second argument is that a guarantee is not an unfair act under the MMPA. First, Rigdon argues that merely guaranteeing work cannot be a deceptive practice. Of course,

that is true, but making the guarantee and then refusing to honor it can be a deceptive practice, because an unlawful practice is a violation of the MMPA "whether committed before, during or after the sale." Mo. Rev. Stat. § 407.020.1. Further, the MMPA is drafted broadly, and there is no specific definition of deceptive practices contained in the statute. *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900 (Mo. Ct. App. 2003). The Missouri Supreme Court has observed that the words of the MMPA describe an unfair practice in terms that are "unrestricted, all-encompassing and exceedingly broad." *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001); *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. 2014). This language does not suggest that a service provider could make a guarantee and then not honor it when the service provider is at fault. Indeed, *Schuchmann v. Air Services Heating & Air Conditioning*, 199 S.W.3d 228 (Mo. App. 2006) gives guidance on the issue. In that case, the defendant gave a lifetime warranty to the purchasers of its product. After problems developed, it refused to honor the warranty. *Id.* at 231. The Missouri Court of Appeals found this to be an unfair practice under the MMPA even though the economic loss doctrine would normally preclude such claims. *Id.* at 234-35.

Rigdon may also be arguing that its refusal to honor the guarantee cannot be an unlawful act under the MMPA because there is a legitimate disagreement about who caused the damage to the windows. The Court understands that Rigdon believes it did not cause the damage and therefore has fully honored the guarantee. But there is evidence that the damage was caused by Rigdon's employees. The Murphys testified that the scratches were not there before the cleaning by Rigdon and they were there after Rigdon cleaned the windows. Viewing the facts in the light most favorable to the Murphys, which the Court must do at the summary judgment stage, a reasonable juror could find that Rigdon employees caused the scratches. Further, even if Rigdon

7

has a good faith belief that it is not at fault, the intent of Rigdon is not relevant. "MPA violations result from a defendant's conduct rather than a defendant's intent." *Missouri v. RCT Development Assoc.,* 290 S.W. 3d 756, 760 (Mo. App. 2009).

If the facts are proven to be as represented by Plaintiffs, i.e., the windows were damaged by Rigdon employees and Rigdon did not pay for them, then there is evidence of an unlawful act under the MMPA. While Rigdon suggests that this will turn all negligence claims into violations of the MMPA, it will do so only when the services offered are guaranteed 100%, the damage is caused by the service provider, and the service provider has not paid as represented.

### 3. Was the Guarantee Mere Puffery?

Rigdon's third argument is that a statement giving a 100% guarantee is mere puffery and mere puffery cannot be a violation of the MMPA.

As a preliminary matter, it is not clear that the doctrine of puffery found in common law fraud jurisprudence is applicable to claims under the MMPA. "The question of whether 'puffery' is actionable under the MMPA, as opposed to the common law in which such statements generally are not actionable, is an interesting question worthy of study. But that question need not be decided in this case." *Hurst v. Nissan North America*, 529 S.W. 3d 322, 325 (Mo. Banc 2017). Although the issue is unresolved in Missouri, this Court will assume, for purposes of this motion only, that the doctrine of puffery does apply to an MMPA claim.

Puffery has been defined as an "'exaggerated statement of bluster or boast upon which no reasonable consumer would rely' or 'vague or highly subjective claims of product superiority'" *Cortinas v. Behr Process Corp.* 2017 WL 2418012, at *2 (E.D. Mo. June 5, 2017). On the other hand,"[i]f a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, i.e., one capable of verification, the statement is one of fact" and is actionable.

8

*Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004). Rigdon describes a 100% guarantee as a "vague and highly subjective statement." The Court disagrees. A 100% guarantee is a statement of fact and would be so understood by a consumer. No one would think that such a guarantee meant that a service provider was responsible for damages from an Act of God or someone passing by. But they would understand that if the service provider damaged something, the service provider would pay for it, regardless of whether they were negligent or not. Such a claim is "capable of verification" by determining whether the defendant caused damage while doing the job and then failed to pay for it.

**B.     Plaintiffs' MMPA Claim Based on Rigdon's Alleged Concealment or Omissions of Defects in their Cleaning Equipment**

Rigdon moves for summary judgment on the Murphys' claim that it committed a violation of the MMPA because it omitted or concealed the fact that the equipment used by Rigdon was defective. The Murphys have not presented any evidence to support this claim. Instead, they ask for additional time to conduct discovery. However, as noted by Rigdon, the Murphys have had ample time to conduct discovery on this issue and have failed to do so. Therefore, the Court will not further delay the resolution of this claim and summary judgment is granted to Rigdon as to this part of the Murphys MMPA claim.

**III.     Conclusion**

For the reasons set forth above Rigdon's Motion for Summary Judgment is granted on the Murphy's MMPA claim based on the omissions or concealment of the condition of Rigdon's equipment and in all other regards is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 21, 2018
Jefferson City, Missouri